## HONORABLE RICHARD W. ROBERTS, UNITED STATES DISTRICT JUDGE

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : Docket No.: <u>CR-05-0205-01</u> | NOV 1 - 2006 |
| vs. | : SSN: | NANCY MAYER WHITTINGTON, CLERK |
| | : | U.S. DISTRICT COURT |
| Solomon, Larry | : Disclosure Date: <u>March 31, 2006</u> | |

### RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

#### For the Government

(CHECK APPROPRIATE BOX)

( )    There are no material/factual inaccuracies therein.

( )    There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____          _____     **Date**
**Prosecuting Attorney**

#### For the Defendant

(CHECK APPROPRIATE BOX)

( )    There are no material/factual inaccuracies therein.

(X)    There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____ 4/12/06     _____     
**Defendant**          **Date**          **Defense Counsel**          **Date**

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>April 14, 2006</u>, to U.S. Probation Officer <u>Kelly Kraemer-Soares</u>, telephone number <u>(202) 565-1353</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

By:    Richard A. Houck, Jr., Chief
       United States Probation Officer

**FEDERAL PUBLIC DEFENDER**
DISTRICT OF COLUMBIA
SUITE 550
625 INDIANA AVENUE, N.W.
WASHINGTON, D.C. 20004

A. J. KRAMER                                                    TELEPHONE (202) 208-7500
*Federal Public Defender*                                           FAX (202) 208-7515

May 19, 2006

Kelly Kraemer-Soares
United States Probation Officer
333 Constitution Avenue, N.W.
Washington, D.C. 20004

BY FAX

               Re:    United States v. Larry Solomon
                      05-CR-205

Dear Ms. Kraemer-Soares:

        I write to submit the following corrections to the Presentence Investigation Report
prepared in the above referenced matter.

        1.  On page 4, in paragraph 12, the report incorrectly indicates that the BPS medical
practice operated out of 10111 Martin Luther King, Jr. Highway.  Only administrative offices
were located at that address.

        2.  Paragraphs 18 through 23, on pages 5 through 7, are inaccurate and/or irrelevant.
These paragraphs describe unproven allegations that Mr. Solomon strongly denies.  Mr. Solomon
did not engage in any scheme to defraud Medicare or Medicaid.  Moreover, these allegations are
not part of the "offense conduct."  The only charge Mr. Solomon pled guilty to is making a false
statement relating to health care matters, in violation of 18 U.S.C. § 1035.  As set forth in the
information and the statement of offense, the false statement made by Mr. Solomon was his
statement in a Medicare application that he had no adverse legal history, when in fact he had a
prior conviction for Medicaid fraud in the State of Maryland.  The government's claims of over-
billing are not accurate.  Mr. Solomon was not responsible for any such over-billing, and any
such allegations are not the offense at issue.  If the report includes this information at all, it
should only be included as unproven government allegations – perhaps under a section for other
arrests, not resulting in a conviction.

Kelly Kraemer-Soares
May 19, 2006
Page 2

I recognize that in determining the applicable offense level and guideline range, you must consider all relevant conduct. See U.S.S.G. § 1B1.3. Relevant conduct includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction," but does not include unproven conduct or conduct that is not part of the same course of conduct or common scheme or plan. As discussed more fully below, the government's allegations are neither proven, nor part of the same course of conduct or a common scheme or plan.

3. As referred to in paragraph 24, on page 7, the government argues that the Medicare and Medicaid programs suffered a direct loss as a result of Mr. Solomon's false statement in this case. There was no loss amount as a result of Mr. Solomon's false statement, and Mr. Solomon is not criminally responsible for any loss to Medicare or Medicaid that the government claims occurred because of billing practices. Moreover, even if the government could demonstrate that a loss occurred as a result of Mr. Solomon's false statement and that Mr. Solomon was responsible for that loss, the government's estimate of the loss is not supported by the evidence.

Generally speaking, there are two claims against Mr. Solomon: (1) that he made a false statement in a Medicare application; and (2) that he engage in a fraudulent billing scheme. Mr. Solomon has admitted and pled guilty to the first allegation – he made a false statement. Mr. Solomon did not engage in a fraudulent billing scheme – that is, he did not willfully and knowingly devise a scheme to defraud. If there were billing errors, they were either not done intentionally or not done by Mr. Solomon. He did not plead guilty to a scheme to defraud and any such scheme is not relevant conduct.

A. Mr. Solomon did not Engage in a Fraudulent Scheme

In order to support an increase in Mr. Solomon's offense level based on financial loss, the government must first prove by a preponderance of the evidence that there was a fraudulent scheme and that Mr. Solomon knowingly, willfully and intentionally engaged in such a scheme. United States v. Pinnick, 47 F.3d 434, 437 (D.C. Cir. 1995); see also United States v. Salmon, 948 F.2d 776, 779 (D.C. Cir. 1991) ("conduct is only relevant if the defendant is accountable for it"). The loss the government refers to is related to billing practices. Mr. Solomon has consistently maintained that he was not responsible for the billing practices of Dr. Potts, his supervising physician, or anyone else and that he is not criminally responsible for any billing errors.

Mr. Solomon's guideline range cannot be increased based on the government's allegations, absent proof that Mr. Solomon is criminally responsible for any over-billing. Over-billing that occurred as a result of the conduct of others or even Mr. Solomon's negligent behavior cannot be considered criminal conduct for which he is responsible – the government

Kelly Kraemer-Soares
May 19, 2006
Page 3


must prove that Mr. Solomon willfully devised a scheme to defraud. See, e.g., United States v.
Hickman, 331 F.3d 439 (5th Cir. 2003).

       B.  No Loss Resulted from Offense.

       Even if the government could prove that some fraud occurred, the offense level can be
increased only if there was a financial loss as a result of the offense at issue. As your report
notes, the applicable guideline for the offense to which Mr. Solomon pled guilty is § 2B1.1, and
the base offense level is 6. This offense level can be increased if a financial loss "resulted from
the offense" or was "intended to result from the offense." See U.S.S.G. § 2B1.1, Application
Note 3(A)(I) and (ii). Here, no loss resulted from the offense or was intended to result from the
offense.

       As set forth in the information, Mr. Solomon's false statement consisted of his statement
that he did not have a prior conviction for Medicaid fraud. This statement was made in the
application for BPS Medical and Rehabilitation to become an authorized Medicare provider.
Based on this application, TrailBlazer Health Enterprises, LLC[1] issued a Medicare group number
(G00846), and two Medicare rendering identification numbers – one to Dr. Charles E. Potts
(00B120B46) and one for BPS (00B121B46).

       Mr. Solomon is a licensed Physician Assistant, and Dr. Potts is a physician. Mr. Solomon
and Dr. Potts provided legitimate healthcare services. The Medicare application at issue was
filed as part of their medical practice. Putting aside the fact that whether or not fraudulent claims
were subsequently submitted (and, if so, who was responsible for them) are disputed issues, there
is no evidence that the application was filed as part of a pre-arranged plan to submit fraudulent
claims, rather than an act done in the normal course of establishing a medical practice. In other
words, the application was not part of any scheme to defraud – because the application was not
part of a scheme to defraud, no loss resulted from the offense, and even if there was such fraud,
that fraud cannot be considered relevant conduct when determining the applicable guideline
range for the offense of conviction.

       Under the guidelines, the alleged fraud can be considered relevant conduct only if it was
part of the same course of conduct or common scheme or plan. See U.S.S.G. § 1B1.3. "For two
or more offenses to constitute part of a common scheme or plan, they must be substantially
connected to each other by at least one common factor, such as common victims, common

---

    [1]TrailBlazer Health Enterprises, LLC is a contracted intermediary and carrier for the
Centers for Medicare & Medicaid Services.

Kelly Kraemer-Soares
May 19, 2006
Page 4


accomplices, common purposes, or similar _modus operand._ . . . Offense that do not qualify as
part of a common scheme or plan may nonetheless qualify as part of the same course of conduct
if they are sufficiently connected or related to each other as to warrant the conclusion that they
are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, Application
Note 9. Neither of these definitions apply here. Conduct is not part of the same course of
conduct if the offense of conviction and the offense offered as relevant conduct can be separately
identified and are of different natures. See United States v. Jones, 948 F.2d 732, 737-38 (D.C.
Cir. 1991).

Additionally, "[w]hen the offense involves making a false statement, the inquiry to
determine loss must focus on the amount of loss related to the false statement." See United
States v. Wilson, 980 F.2d 259, 262 (4th Cir. 1992). Losses that would have occurred even if the
false statement had not been made should not be included. See Id.; see also United States v.
Copus, 110 F.3d 1529 (10th Cir. 1997).

As discussed above, the false statement on the application was not part of any fraudulent
scheme, nor was it a necessary prerequisite to any such scheme. Any fraudulent conduct is not
relevant conduct and any losses that occurred as a result of any fraudulent conduct cannot be
attributed to the false statement. Although Mr. Solomon made a false statement regarding his
prior record, the fact of Mr. Solomon's prior conviction did not make him ineligible to be a
provider and certainly did not disqualify Dr. Potts from being a provider and obtaining a
rendering number. Even if Mr. Solomon had disclosed his prior conviction, Dr. Potts would
have been provided with his rendering number and it is likely that Mr. Solomon also would have
been provided with the rendering number. Thus, even if fraud subsequently occurred – a claim
that we dispute – no loss resulted from the offense at issue, that is Mr. Solomon's false statement
regarding his prior record.


C.  Government Loss Calculation is Erroneous


Finally, in objections submitted on April 13, 2006, the government claims that there was
a loss of $316,582.94, and has since amended that number to $307,737.10.[2] This claim is not
supported by the evidence. The government obtained this alleged loss amount by beginning with

---

[2]This amount should be further amended to $305,737.10, because the government's
calculations include an additional error. If you have the documents the government provided to
me setting forth their calculations, on page 17 the 269 claims listed at the top of the page total
$25,714.15, not $27,714.15, which reduces the loss calculation by $2,000.00.

Kelly Kraemer-Soares
May 19, 2006
Page 5


all of the claims submitted by BPS Medical to Medicare under both the rendering number issued
to Dr. Potts (00B120B46) and the number issued to BPS (00B121B46). The government
eliminated the claims that they could not allege were associated with Mr. Solomon, and then
determined the dollar amount that Medicare paid for the remaining claims. The government then
determined the difference between the amount paid on these claims and the amount that would
have been paid by Medicare on these claims if they were charged at the rate for a Physician
Assistant performing the most minimal tasks for home visits.

Assuming arguendo that any loss amount resulted from Mr. Solomon's false statement,
the government's loss number greatly over estimates the value of any loss to Medicare that can
be attributed to Mr. Solomon's false statement. First, the only loss that could possibly be
attributed to Mr. Solomon's false statement in his Medicare application is the value of the claims
submitted under the rendering number he obtained as a result of the application. Most of the
claims the government includes within its calculation were submitted under the rendering
number issued to Dr. Potts (00B120B46). These claims would have been paid even if Mr.
Solomon had not made the false statement that is the basis for the charged offense. Dr. Potts was
entitled to obtain his rendering number, independent of Mr. Solomon. These claims therefore are
not related to the charged offense and cannot be included in the loss amount. See, e.g., United
States v. Haddock, 12 F.3d 950, 963 (fees that would have been paid even if the false statement
had not occurred could not be included in loss amount).

The total value of all of the claims submitted under the number issued to BSP as a result
of the application (00B121B46) is $67,428.64. While we maintain that there can be no loss
amount attributable to the offense conduct, this number reflects the claims absolute maximum
amount that can possibly (although remotely) be arguably associated with the false statement. If
the total amount of these claims (that is the dollar amount actually paid by Medicare on these
claims) is used as the loss amount, the offense level would increase 6 levels, for a total of 12,
minus 2 levels for acceptance of responsibility, for a total offense level of 10, resulting in a
sentencing range of 6 to 12 months in Zone B, permitting home detention in lieu of incarceration.

The government's loss amount – and the $67,428.64 discussed above – also greatly over
estimate the value of any loss to Medicare because these values presume that Mr. Solomon never
performed more than the minimal requirements and that Mr. Solomon was responsible for the
billing for patients seen by other Physicians Assistants and/or Dr. Potts. The government has not
provided proof that Mr. Solomon was responsible for the billing in relation to these patients or
that his responsibility was the result of more than negligence. Therefore, Mr. Solomon's offense
level cannot be increased based on the government's loss allegations.

Kelly Kraemer-Soares
May 19, 2006
Page 6


4. In paragraph 25, on page 7, only the medicare program was a victim of this offense.
The offense was the false statement in the Medicare application -- completely unrelated to any
Medicaid programs. As discussed above, no monetary loss to the Medicare program resulted
from Mr. Solomon's conduct.

Thank you for taking the time to review these corrections. Please call me if you have any
questions regarding these matters.


Sincerely,

Mary Manning Petras


cc: AUSA Thomas E. Zeno

Pride in Jon

One of those occasions when parent can brag

read before school (Jen too)

kind brother

soccer

caught football (hands) left high school team (championship)

football (Redskins)

golf (beat T)

politics (labor)been a good Democrat ever since!

music (Beatles) and other classic rock

spelling bee

gifted and talented grades in school, sat scores, merit scholar,

photo award

Cornell (wonderful friends made there!)  *Brothers from other mothers*
graduation

*-#,\ Been beat ken?*

wonderful friends (high school principal)mention pat and aren

Erin-thoughtful,genuine, funny smart, lovely, accomplished (3rd child) published under Romero.
Not afraid of boyfriend's mom

US vs. Solomon

Civil/Criminal No. 5-205

DEFENDANT'S EXHIBIT

PENGAD - Bayonne, N. J.

| EXHIBIT NUMBER | DESCRIPTION OF EXHIBITS | MARKED FOR I.D. | RECEIVED IN EVIDENCE | WITNESS | EXHIBITS SENT INTO JURY (date & time) |
|---|---|---|---|---|---|
| 9 | CD | "/ | | Queen | |
| 10 | roster (Pats - Off) | | | | |
| 11 | physician statement | | | | |
| 2 | rept of interview | | | | |
| 4 | Gatt letter | | | | |
| 5 | interview | | | | |
| 6 | Pats. letter | | | | |
| 7 | Pats. letter | | | | |
| 8 | Day statement | | | | |