IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Criminal No. 05-205 (RWR) |
| | : | |
| v. | : | |
| | : | |
| **LARRY SOLOMON,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO MOTION TO CLARIFY JUDGMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum opposing the defendant's motion to clarify the judgment.

### SUMMARY

Although defendant Solomon styles his motion as a request to clarify the Judgment and Commitment Order ("J&C"), nothing about the terms of sentence imposed upon the defendant is unclear or in need of clarification. In pertinent part, the Court sentenced the defendant to six months in the custody of the Attorney General. The Court further recommended that the defendant be placed in a halfway house for those six months. Instead of complaining about these terms, the defendant seeks to have this Court declare a policy of the Federal Bureau of Prisons ("BOP") invalid and then direct the BOP regarding implementation of the sentence. This relief is outside the scope of Fed. R. Crim. P. 35(a), which is designed to rectify the narrow category of obvious errors or mistakes to a judgment. The defendant's proper remedy is a habeas corpus petition pursuant to 28 U.S.C. § 2241. Accordingly, the defendant's motion to clarify judgment should be denied.

The Court should not reach out to decide the issue presented by the defendant because, even if it were properly before the Court, the defendant's motion should be denied on the merits. The BOP has broad discretion in making decisions about prisoner placement, and the courts lack the authority to order that a prisoner be confined in any particular institution. The BOP's new policy of not designating or transferring prisoners to halfway houses is a reasonable interpretation of law because, as several Courts of Appeals have held, confinement in a halfway house is not imprisonment for purposes of sentencing. The application of BOP's new policy does not violate the defendant's rights under the Due Process Clause because the defendant has no right to serve his prison sentence in a particular institution or program. Additionally, there is no fundamental right at stake here warranting substantive due process protection and the defendant's expectation of serving his sentence at a halfway house does not give rise to a protected liberty interest. Finally, the defendant's due process rights have not been violated because he had fair notice of the law.

## ARGUMENT

**I.     The Court's Order is clear and not in need of clarification.**

The pertinent terms of the sentence are straightforward and clear: the defendant has been committed to the custody of the Attorney General for six months. In addition, the Court recommended that the defendant serve this sentence in a halfway house. In his motion to clarify judgment, the defendant does not ask that anything be changed or explained about the J&C. Instead, the defendant requests that this Court find unconstitutional certain regulations promulgated by the BOP, which limit placement in Community Correction Centers ("CCC" or "halfway houses") to the lesser of the last six months or the last ten percent of a prisoner's

sentence, see 28 C.F.R. §§ 570.20, 570.21.  The defendant further requests that this Court direct the BOP to consider this Court's recommendation that the defendant serve his six-month sentence in a halfway house.  This type of ruling is not appropriate for a motion to clarify judgment under Fed. R. Crim. P. 35(a).

By its terms, Rule 35(a) allows a court to "correct a sentence that resulted from arithmetical, technical, or other clear error."  As the Advisory Committee Notes explains, the 7 day time limit within which the Court must act under the rule not only prevents jurisdictional problems in the event of an appeal, but

> [a] short[] period of time would also reduce the likelihood of abuse of the rule by limiting its application to acknowledged and obvious errors in sentencing.
>
> The authority to correct a sentence under this subdivision is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a).

The Rule is not the appropriate vehicle to address broad policy and constitutional issues, such as raised by the defendant's challenge to the BOP regulations.  This is evident from the current status of the litigation about this issue.  Although three Courts of Appeals have invalidated the BOP rule, none of those decisions were unanimous.  See, infra at p. 10.  Further, a split exists among the District Courts on this issue.  See, Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244 at n. 9 and n. 10 (3rd Cir. 2005)(listing cases on both sides of the issue).  The complexity of this matter is further underscored by the fact that the Honorable Judge Henry H. Kennedy's decision in Jasperson v. Federal Bureau of Prisons, ___ F. Supp.2d ___, 2006 WL

3060087 (D.C.C.), only granted a preliminary injunction on October 30, 2006. That case still is pending resolution on the merits.

Cases involving the very issue raised by the defendant make clear that the proper method to challenge the constitutionality of the BOP regulations is to file a habeas corpus petition pursuant to 28 U.S.C. § 2241. The defendant is challenging regulations that effect where he will serve out his sentence, which is an issue that relates to the execution of his sentence as opposed to the imposition or lawfulness of his sentence. See Levine v. Apker, 455 F.3d 71, 78 (2nd Cir. 2006) (noting that the execution of a sentence includes matters such as the type of detention and prison conditions). Both the Second and Third Circuits have recently been confronted with challenges to the same BOP regulations involved in this case by defendants whose sentences confined them to federal correction centers rather than CCCs. Apker, 455 F.3d at 73; Woodall, 432 F.3d at 237. Both Circuits held that a challenge of this type was one dealing with the execution of a sentence, the proper vehicle for which was a habeas petition under 28 U.S.C. § 2441. Apker, 455 F.3d at 78; Woodall, 432 F.3d at 237.

Other Courts of Appeals ruled the same way when considering the proper vehicle for challenging where a defendant will serve his sentence. See Montez v. McKinna, 208 F.3d 863, 865 (10th Cir. 2000) (finding that aspects of a prisoner's habeas petition "focusing on where his sentence will be served, seems to better fit under the rubric of § 2241"); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) (per curiam) ("Generally . . . petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to §2241 in the custodial court."); United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991) (challenges to the place of imprisonment, and not to the fact of federal conviction, are properly brought under

§2241). The Seventh Circuit took a slightly different approach by holding that a petitioner's challenge to the BOP's placement policies cannot be brought via a habeas petition but rather must be brought in a civil action under the Administrative Procedures Act. Richmond v. Scibana, 387 F.3d 602, 605-06 (7th Cir. 2004). However, none of these decisions support the notion that the defendant can litigate this matter as part of a motion to clarify his J&C under Rule 35(a).

## II.    The Defendant's claim fails on the merits as well.

### A.    Statutory and Regulatory Background

Federal law provides for the placement of federal prisoners in non-prison sites such as halfway houses shortly before the conclusion of their sentences to allow the prisoners an opportunity to adjust to the community prior to their release. This "pre-release custody" is governed by 18 U.S.C. § 3624(c), which provides to the extent practicable that such placement will take place during the last ten percent of a prisoner's sentence, not to exceed six months:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment <u>spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served</u> under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c)(emphasis added). BOP had followed a practice of designating certain offenders to halfway houses with short sentences when the sentencing court made such a judicial recommendation in the J&C and the inmate's custody classification allowed for such placement.

In 2002, the BOP abandoned this practice initially as a result of an opinion issued by the Office of Legal Counsel. Subsequently, this change in practice was published as a proposed rule for notice and comment. See 71 F.R. 47696. Subsequently, this proposed rule was adopted. See

5

28 C.F.R. § 570.21. Accordingly, pursuant to the Department of Justice's interpretation of § 3624(c), the Bureau of Prisons does not transfer inmates to pre-release community confinement for any longer than a reasonable portion of the last ten percent of the inmates' sentences. Thus, inmates are no longer serving sentences in halfway houses.

### B.    The New Policy is a Reasonable Interpretation of Law

Several Courts of Appeals have found that for purposes of sentencing confinement to a halfway house is not imprisonment. See United States v. Adler, 52 F.3d 21, 21 (2d Cir. 1995); United States v, Swigert, 18 F.3d 443, 445 (7th Cir. 1994); United States v. Voda, 994 F.2d 149, 152 (5th Cir. 1993); United Stats v. Latimer, 991 F.2d 1509 (5th Cir. 1993). Thus, neither the Courts, nor the BOP in executing the Courts' sentences, have the authority to treat a halfway house as a place of confinement.

The broad discretion of the BOP has long been recognized, and indeed a Court lacks the authority to order that a prisoner be confined in any particular institution. "[T]hose decisions are within the sole discretion of the Bureau of Prisons." United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995); see also United States v. Restrono, 999 F.2d 640, 645 (2d Cir. 1993)("The Bureau is given a great deal of flexibility with respect to the assignment of any prisoner to a correctional facility."). Indeed, the Supreme Court held in Olim v. Wakinekona, 461 U.S. 238, 245 (1983), that a prisoner does not have a constitutional right to be housed in any particular institution, or even in any particular jurisdiction: "Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." In particular, the Constitution does not require that an inmate be placed in the least restrictive institution available. For example, "[t]hat life in one

prison is much more disagreeable than in another does not in itself signify that a . . . liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." Meachun v. Fano, 427 U.S. 215, 225 (1976). It necessarily follows that even if the BOP's former practice were applied to the defendant, the BOP would still have the authority and discretion to incarcerate him in a prison versus a halfway house.

  C. **Application of BOP's New Interpretation of 18 U.S.C. § 3624(c) to Defendant Does Not Violate Due Process.**

  **1. Defendant Has No Right to Serve His Prison Sentence in a Particular Institution or Program.**

There are no due process concerns with applying the new BOP interpretation to the defendant. For prisoners, liberty interests protected by due process are "interests generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). It is well-established that a prisoner does not possess a protected liberty interest in serving his term of imprisonment in a particular institution or program, whether it be a custody facility or a CCC. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (concluding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system;" noting "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); Montanye v Haymes, 427 U.S. 236, 242 (1976) (same); cf. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (noting that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State").

It is well established that federal prisoners do not have a protected liberty interest in halfway house placement, and that BOP has complete and absolute discretion in determining halfway house placement. See, e.g., Pugliese v. Nelson, 617 F.2d 916, 923–25 (2d Cir. 1980); United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991); United States v. Jalili, 925 F.2d 889 (6th Cir. 1991). Courts have long recognized that the authority to incarcerate, classify, and transfer federal prisoners falls within the broad discretion of the BOP, and indeed a Court lacks the authority to order that a prisoner be confined in any particular institution. "[T]hose decisions are within the sole discretion of the Bureau of Prisons." United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995); see also United States v. Restropo, 999 F.2d 640, 645 (2d Cir. 1993) ("The Bureau is given a great deal of flexibility with the respect to the assignment of any prisoner to a correctional facility."); Leibowitz v. United States, 729 F. Supp. 556, 561 (E.D. Mich. 1989) ("The Bureau of Prisons enjoys almost absolute discretion over assignment, transfer, and conditions of confinement."), aff'd, 914 F.2d 256 (6th Cir. 1990). This discretion is so far reaching that such decisions are not reviewable under the APA. See 18 U.S.C. § 3625.

The D.C. Circuit has held that in view of the BOP's discretion in making prisoner assignment and transfer decisions, there is no "constitutionally protected interest in halfway house placement." Ostrer v. BOP, No. 89-5028, 1989 WL 128033, at * 1 (D.C. Cir. Sept. 6, 1989) (per curiam summary affirmance). The fact that Defendant's unilateral expectation that he would serve his six-month sentence at a halfway house may be frustrated is of no constitutional significance, because such an expectation cannot give rise to a protected liberty interest. See Smith v. United States, 277 F.Supp.2d 100, 110 (D.D.C., Aug. 19, 2003) (" . . . CCC placement is not 'implicit in the concept of ordered liberty' and the petitioner therefore has no substantive

due-process claim to it. Thus, any interest that the petitioner can claim in a CCC surely cannot rise to so high a level as to qualify as a fundamental right."); United States v. Andrews, 240 F. Supp. 2d 636, 638-39 (E.D. Mich. 2003) (upholding BOP's new policy against challenge based on due process clause). It necessarily follows that even if the defendant is correct and the BOP's former policy must be applied to him, the BOP still has the authority and discretion to transfer him to a prison facility. For this reason alone, even if the defendant is correct, he still has failed to state a claim upon which relief may be granted.

### 2. There is No "Fundamental" Right at Stake Herein Warranting Substantive Due Process Protection.

Substantive due process rights attach only when a "fundamental" right is involved, thus ensuring that the government does not unjustifiably infringe on that right. Hutchins v. District of Columbia, 188 F.3d 531, 535 (D.C.Cir.1999). Not all rights are fundamental. Only those rights that are "implicit in the concept of ordered liberty" are considered to be fundamental. Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937); San Antonio Independent School District v. Rodriguez, 411 U.S.1(1973) (education not a fundamental right); Dandridge v. Williams, 397 U.S. 471 (1970) (receipt of public welfare not fundamental right). In Smith v. United States, 277 F.Supp.2d 100 at 110 (D.C. D. 2003), any right to placement in a halfway house was found not sufficiently "fundamental" for substantive due process purposes:

> The petitioner cannot make out a substantive due-process claim under the Fifth Amendment because substantive due process only attaches when a fundamental right is at stake. Hutchins, 188 F.3d at 535; Beo, 44 F.3d at 1028 (quoting Rochin v. California, 342 U.S.165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and Planned Parenthood v. Casey, 505 U.S.833, 846-48, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The D.C. Circuit, echoing the Supreme Court, has recognized that " 'the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended,' " and so " 'has always been reluctant to expand the concept of substantive due process.' " Beo, 44 F.3d at 1028

>   (quoting Albright v. Oliver, 510 U.S. 266, 271-72, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992))).  As a result, substantive due- process protections " 'have for the most part been accorded to matters relating to marriage, family, procreation and the right to body integrity.' "  Id.  Put another way, CCC placement is not "implicit in the concept of ordered liberty" and the petitioner therefore has no substantive due-process claim to it.  Palko, 302 U.S. at 325, 58 S.Ct. 149.  Thus, any interest that the petitioner can claim in a CCC surely cannot rise to so high a level as to qualify as a fundamental right.

Id.; Beo, 44 F.3d at 1028.

The Defendant asserts that his due process rights are violated because the new regulation contravenes 18 U.S.C. § 3621(b).  The Defendant asserts he has a right to have his designation made in accordance with the BOP's prior practice.  He relies on three decisions by the Third, the Eighth, and the Second Circuits which ruled against the BOP on this issue.  See Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Woodall v. Federal Bureau of Prisons, supra, 432 F.3d 235; Levine v. Apker, supra, 455 F.3d 71.  However, as noted above, those decisions came from split courts.  The government submits that the dissenting opinions correctly found that the BOP's decisions regarding halfway house placement were appropriate under the statutory construction adopted by the agency.  See Levine, supra, at 87-91 (Judge Raggi concluded that the new regulation is a ". . . permissible categorical rejection of CCCs as appropriate and suitable facilities for 3621(b) designations generally, with a limited exception only for those circumstances where Congress has identified statutory considerations pursuant to 18 U.S.C. §§ 3621(e)(2)A), 3624 ( c), or 4046( c), in addition to those catalogued in § 3621(b).");  Elwood, supra, at 848 (Judge Riley found that "By reading the two sections together to permit the BOP to begin to transition inmates at any time during their imprisonment, the majority eviscerates both the specific limitations set forth in section 3624( c) and Congress's express intention to limit the amount of time permitted for CCC

placement at the conclusion of an inmate's term."); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005)(Judge Fuentes concluded that " . . . the BOP may categorically preclude the consideration of any inmate for CCC [placement] without reference to the §3621(b) factors, under the Supreme Court's holding in *Lopez*.").

### 3. Defendant Had "Fair Notice" of the Law.

In Ashkenazi v. Attorney General of United States, 246 F. Supp.2d 1 at 6 (vacated due to mootness by the D.C. Circuit), a "Front End" halfway house direct commitment case, the court considered whether the defendant and the sentencing court had fair notice of the change in policy announced by the BOP in December 2002. The court said if there is a protected interest at stake, it is "the right of fair warning" as discussed in Davis v, Moore, 772 A.2d 204, 217-218 (D.C. 2001) (en banc) (quoting Bouie v. City of Columbia, 378 U.S. 347, 352 (1964).[1] Davis teaches that in evaluating notice, it is highly relevant to consider what the plaintiff's lawyer would have found had he not merely relied on his understanding of the BOP's former policy, but instead "examine[d] the state of the law and advise[d] [plaintiff] as to whether" the BOP's former policy was consistent with 18 U.S.C. § 3624(c).  See Davis, 772 A.2d at 218.  On the ultimate merits of that question, reasonable lawyers could have differed, as in actuality they did; but a competent lawyer would have warned [plaintiff] that the issue was controverted and unresolved . . . . [Plaintiff] would have been warned, in other words, that despite . . . the issuance of implementing

---

[1] The Honorable Gladys Kessler noted that, " with no disrespect to the D.C. Court of Appeals," Davis was not binding on the Court and "there is no similar controlling precedent in this Circuit governing this case." 246 F. Supp.2d at 6.

regulations by the [BOP], and the seemingly uniform views of officials . . ., [the BOP's policy] might turn out to [require change] after all.  See Davis, 772 A.2d at 218.

Defendant's frustrated expectations do not amount to a due process violation.  To the extent that the agency's prior policy was a mistake, the mistake, while "regrettable," did not make application of the new policy unforeseeable, because "the general rule is otherwise."  Id.  Relying on numerous cases, including six Supreme Court decisions, the Court explained that an official mistake does not give rise to a liberty interest except in extreme circumstances:

> An expectation . . . that is induced not by a valid statute or regulation but by the mistaken representations of officials does not without more give rise to a liberty interest entitled to protection under the Due Process Clause . . . . "Only in rare circumstances have courts allowed the misconstructions of officials to estop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations." . . . Thus, it is a well-established rule that a prisoner has no constitutional right to object to the correction of a miscalculation of his sentence. . . . Rather, "[t]he public have rights in such matters which it is beyond the power of the public officer to barter away," . . . . The offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention, . . . public safety, . . . and punishing criminals, . . . .

Davis, 772 A.2d at 219-20 (citations omitted) (emphasis added).  Davis also drew a parallel to Bozza v. United States, 330 U.S. 160, 166-67 (1947), where the Supreme Court observed in an analogous context that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."  Davis, 772 A.2d at 219 n.9.  This case does not present the sort of extreme circumstances of unfairness warranting due process protection.  See Davis, 772 A.2d at 220.  As explained above, this defendant has been on notice that he will not be assigned to a halfway house for service of his sentence.  The new regulation was published in January 10, 2005 and became effective on February 14, 2005.  This

is a case involving no more than "frustrated expectations" that do not amount to a due process violation. See id. at 219.

### 4. Defendant's Expectation of Serving his Sentence at a Halfway House Does Not Give Rise to a Protected Liberty Interest.

A defendant's own subjective expectation that, based upon prior BOP practice, he would be housed in a halfway house, does not entitle him to due process relief.

In United States v. Addonizio, 442 U.S. 178 (1979), the Court held that a similar expectation provided no basis for collateral relief. In Addonizio, the district court sentenced the defendant to a 10-year term of imprisonment and expected that the defendant would be released on parole after serving approximately one-third of this term, based on "generally-held notions" of the operation of the parole system at the time of defendant's "old-law" sentence. Id. at 181, n.3. However, the district court's expectations were subsequently frustrated by a post-sentencing change in Parole Commission policy under which the gravity of the offense became a more significant factor in the parole release decision. Id. at 182. The defendant filed a motion for re-sentencing under Section 2255, which the district court granted, noting that the court's "'sentencing expectation' was frustrated by the Parole Commission's subsequent adoption of new standards and procedures." Id. at183. The Supreme Court, however, rejected the defendant's argument that a post-sentencing change in the policies of the U.S. Parole Commission authorized a district court to vacate a defendant's sentence, pursuant to Section 2255, in order to effectuate the judge's subjective intent at the time of sentencing. Id. at 187. Moreover, the Court rejected the argument that the defendant's sentence was based on "misinformation of constitutional magnitude." Id. Rather, the Supreme Court distinguished between a court's incorrect

assumptions about subsequent parole policy, which did not provide a basis for collateral relief, and a court's incorrect assumptions about a defendant's criminal record at the time of sentencing, which could provide a basis for collateral relief.  Id. (citing United States v. Tucker, 404 U.S. 443 (1972)).  Like the retroactive policy change in Addonizio, BOP's decision to place the defendant in a prison setting, pursuant to its interpretation of the statute, does not constitute a due process violation that would authorize this Court to grant other collateral relief.  See Addonizio, 442 U.S. at 190; see also United States v. Jalili, 925 F.2d 889, 892-93 (6th Cir. 1991).

WHEREFORE, the government respectfully requests that the defendant's motion to clarify judgment be denied.[2]

Respectfully submitted,

Jeffrey A. Taylor
United States Attorney
D.C. Bar No. 498610


/s/ Attorney's Typed Signature
Thomas E. Zeno
Assistant United States Attorney
D.C. Bar No. 348623

/s/ Attorney's Typed Signature
Kim Herd
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room 5243
Washington, D.C.  20530
(202) 514-6957

---

[2]  We wish to acknowledge the contributions of Michael Applebaum, a second-year student at The George Washington University Law School, in the preparation of this memorandum.